MYERS, P.J.,
for the Court.
¶ 1. Emily Louise Parker DeVito and Thomas Peter DeVito, Jr. divorced after a six-year marriage, from which one minor child was born. Mr. DeVito was awarded custody of the child, and Ms. DeVito appeals this decision of the chancellor, asserting an abuse of discretion. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 2. This Court’s standard of review in domestic relations cases is established and clear. Child custody matters fall within the sound discretion of the chancellor. Sturgis v. Sturgis, 792 So.2d 1020, 1023(¶ 12) (Miss.Ct.App.2001). Therefore, a chancellor’s ruling will not be disturbed unless we find the decision was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Brekeen v. Brekeen, 880 So.2d 280, 283(¶ 4) (Miss.2004); Cooper v. Ingram, 814 So.2d 166, 167(¶ 2) (Miss.Ct.App.2002). “However, where the chancellor improperly considers and applies the Albright factors, an appellate court is obliged to find the chancellor in error.” Brekeen, 880 So.2d at 283(¶ 4) (quoting Hollon v. Hollon, 784 So.2d 943, 946 (Miss.2001)).
DISCUSSION
¶ 3. In the chancellor’s on-the-record analysis of the Albright factors, he found that eight factors favored Mr. DeVito and the remaining four factors did not favor either party. Specifically, the chancellor found that Ms. DeVito has an unstable work history and home environment, and awarded custody to Mr. Devito. Ms. De-Vito claims that the chancellor failed to consider under the Albright analysis certain evidence put forth regarding Mr. De-Vito’s moral fitness and employment history, and that this failure resulted in an improper award of custody to Mr. DeVito. Ms. DeVito alleges that the chancellor failed to properly consider Mr. DeVito’s viewing of pornography on two family computers, his veracity, his adultery in the presence of the child, and his spotty job history, before awarding custody to Mr. DeVito. Further, Ms. DeVito argues that the chancellor relied too heavily upon the testimony regarding her sexual behavior in denying her request for custody. Mr. De-Vito argues that the chancellor was correct in his decision to award custody because the decision was supported by credible evidence.
¶ 4. The chancellor found that Ms. De-Vito failed to prove her allegations against Mr. DeVito regarding his viewing of internet pornography on family computers and adultery. As a result, and combined with the evidence of Ms. DeVito’s admitted adultery, Mr. DeVito was favored on the moral fitness factor. Mr. DeVito was also favored in the analysis of the employment history factor, and Ms. DeVito challenges this finding, as well.
¶ 5. At trial, both parties called computer expert witnesses to testify re *76 garding the pornographic images that were found on the family computers. Mr. DeVito’s expert testified that proper protocol regarding recovering the images had not been followed, and that he was unable to identify the computer user responsible for downloading the images. Mrs. De-Vito’s expert testified that he was unfamiliar with the proper protocol in insuring the integrity of the photographic images from the computers’ hard drives and that he was unable to identify the person responsible for placing the images on the hard drives. In analyzing the moral fitness factor of the Albright test, the chancellor found that this testimony was insufficient to base a finding that Mr. DeVito’s viewing of internet pornography weighed against him. We cannot disagree.
¶ 6. Also, during trial, Ms. DeVito sought to elicit testimony from Mr. DeVito and his alleged paramour regarding an affair. However, Mr. DeVito, as well as the person alleged to be his lover, denied having ever participated in a sexual or romantic relationship. No evidence was put forward by Mrs. DeVito proving otherwise. The chancellor found that Mrs. DeVito failed to prove that Mr. DeVito had committed adultery, and we cannot say, based on the evidence in the record, that the chancellor erred in making this finding.
¶ 7. As to Ms. DeVito’s argument regarding the chancellor’s placing too much emphasis on her admitted adultery in formulating the custody award, we recognize that the supreme court has held that sexual behavior, alone, is not enough to deny custody to a parent. Moak v. Moak, 631 So.2d 196, 197 (Miss.1994). While the chancellor did mention Ms. De-Vito’s admitted affair in the context of analyzing her moral fitness under Al-bright, the entire finding that Mr. DeVito was favored was not solely based on Ms. DeVito’s adultery. The chancellor also noted Mrs. DeVito’s alcohol use and traffic violations in the analysis. We do not find error in the decision of the chancellor to favor Mr. DeVito in the moral fitness analysis under the Albright test.
¶ 8. Ms. DeVito also challenges the chancellor’s analysis of each party’s employment and responsibilities of that employment. The chancellor found that Mr. DeVito had been employed with the same employer since December of 2003, as opposed to Mrs. DeVito’s five to six job transitions since that time. Further, the chancellor considered the hours each party was obligated to work, and noted that Ms. DeVito was required to work late two evenings a week. Based on this evidence, Mr. DeVito was favored in the analysis of the employment history factor. We cannot find that this decision was erroneous. In the present situation, we cannot find that the chancellor erred in finding that the interests of the child are better served in the custody of the father.
¶ 9. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.